24 C.C.P.A. (Patents)

## In re ROGERS.

### Patent Appeal No. 3709.

Court of Customs and Patent Appeals.

Feb. 1, 1937.

Ellis S. Middleton, of New York City, and Walter M. O'Brien, of Washington, D. C., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claim 12 in appellant's application for a patent for an alleged invention relating to "surgical tape."

The appealed claim reads: "12. As a complete article of manufacture a surgical tape comprising a laminated ribbon of submucous animal intestinal tissue."

The references relied upon are: Tivet, 208,548, October 1, 1878; Wise et al., 1,281,466, October 15, 1918; Uyama, 1,476,740, December 11, 1923; Consortium (British), 386,161, January 12, 1933; article in "Surgery, Gynecology and Obstetrics" for October, 1933, pages 494–500 of volume 57, by Lowsley & Bishop. Title, "A New Method of Repairing Kidney Wounds."

We deem it unnecessary to discuss the decision of the Primary Examiner.

The Board of Appeals was of opinion, as was the Examiner, that appealed claim 12 was not patentable over the prior art, but allowed claims 13 and 14, which were rejected by the Examiner.

In its decision, the Board stated that claim 12 covered surgical tape of laminated submucous animal intestinal tissue, and that the reference "Article in 'Surgery, Gynecology and Obstetrics' for October, 1933, pages 494–500 of Vol. 57, by Lowsley & Bishop, Title, 'A New Method of Repairing Kidney Wounds,'" disclosed a flat ribbon of catgut for "the same purpose as that of applicant." The board further stated that applicant is not the first to employ "a ribbon of absorbable material in making a ligature"; that the feature of using laminations was to strengthen the ligature; and that, if there were any patentable feature in the article, it was in the material, to wit, "submucous animal intestinal tissue."

It is perfectly obvious from the record that no one had ever used the particular material here involved, except in combination with some other material. Nevertheless, the Board held that there was no invention in selecting that particular layer of the intestines.

We quote from the Board's decision: "* * * In the making of catgut, it has been conventional practice to choose a portion of the intestines, generally the outer portion or layers. Those skilled in this art have worked with the different layers and without doubt have known their general characteristics. One layer may perhaps differ from another, but it has apparently been expedient as a general rule to use the outer layers in making catgut. Such catgut has been made in the form of twisted threads or in the form of ribbon (Publication cited). Evidently the ribbon used in the publication has sufficient strength for the purpose for which it is used. It may well be that the submucous layer has not been used because more than one layer appears to be necessary to give it desired strength. We think, however, that the choice of the submucous layer is too obvious to involve any invention and regard claim 12 as being unpatentable."

There is nothing of record to even remotely suggest the prior use of laminated ribbon of submucous animal intestinal tissue for surgical tape. On the contrary, the record shows that such material had never been so used, and that the teachings of the art did not suggest that it be used alone.

Why, then, should it be held that appellant is not entitled to a patent? It has not been suggested that the material for which he seeks a patent, for the purpose for which it is used, is not new, or that it is not useful. The sole question, therefore, is whether its use for the particular purpose mentioned involves invention. We are of opinion that, on the record before us, it does.

Accordingly, the decision of the Board of Appeals is reversed.

Reversed.